PD-1341-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/18/2015 10:18:13 PM
Accepted 8/19/2015 7:59:20 AM
ABEL ACOSTA
CLERK

# APPELLANT REQUESTS ORAL ARGUMENT/
# ORAL ARGUMENT GRANTED

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

_____

## No. PD-1341-14

_____

FILED IN
COURT OF CRIMINAL APPEALS

August 19, 2015

ABEL ACOSTA, CLERK

## STACY STINE CARY, Appellant

### v.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Court of Appeals, Fifth District of Texas at Dallas
Court of Appeals No. 05-12-01421-CR**

_____

## APPELLANT'S REPLY BRIEF

John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx 75204
Tel:  (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLANT,
STACY STINE CARY

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………...………............i

INDEX OF AUTHORITIES………………………………………….………......ii

I.      REPLY TO ARGUMENTS REGARDING ISSUES PRESENTED……......1

      A.      ISSUE 1:  THE COURT SHOULD REVERSE MS. CARY'S
              BRIBERY CONVICTIONS BECAUSE THE STATE
              AFFIRMATIVELY NEGATED THE ELEMENT OF
              BRIBERY BY SOMETHING OTHER THAN "POLITICAL
              CONTRIBUTIONS," AND THE EVIDENCE WAS
              THEREFORE INSUFFICIENT……………………….…………...2

              1.      THERE WAS NO ESTOPPEL OR INVITED ERROR............2

              2.      THE EVIDENCE WAS INSUFFICIENT TO DISPROVE
                       BENEFIT BY POLITICAL CONTRIBUTION BEYOND
                       A REASONABLE DOUBT…...…………………………8

      B.      ISSUE 2:  THE EVIDENCE WAS INSUFFICIENT TO
              PROVE THE REQUISITE OFFICIAL ACTION INTENDED
              TO BE EXCHANGED FOR THE ALLEGED BENEFIT, AS
              REQUIRED BY THE BRIBERY STATUTE………………………14

      C.      ISSUE 3:  THE EVIDENCE WAS INSUFFICIENT TO
               PROVE THAT MS. CARY HAD THE REQUISITE INTENT
              TO COMMIT BRIBERY…………………………………...………19

      D.      ISSUE 4:  THE EVIDENCE WAS INSUFFICIENT TO
               SUPPORT MS. CARY'S CONVICTION FOR ENGAGING
              IN ORGANIZED CRIMINAL ACTIVITY AND MONEY
              LAUNDERING……………………………….……….20

CONCLUSION………………………………………………………...…21

# INDEX OF AUTHORITIES

**Statutes/Rules:**

Texas Election Code § 251.001 (2), (3), (5)……………………………….……5

Texas Penal Code § 2.02(b)………………………...................................................4

Texas Penal Code § 7.02…………………………………………..................11

Texas Penal Code § 36.02 (a)(1) and (2)……………………….....…4, 8, 10, 14

Texas Penal Code § 36.02(a)(1), (2), (3)………………………………..…7

Texas Penal Code § 36.02(a)(4)……………………………………………7, 8

Texas Penal Code § 36.02(d)…………………………………………….2, 4, 7, 8

Texas Penal Code § 36.09……………………………………………10, 15


**Cases:**

*Cary v. State*, No. 05-13-01010, slip op. at 11 (Tex. App.—Dallas, March 25, 2015)……………………………………………………………….………6

*Ex parte Thompson,* 179 S.W. 3d 549 (Tex. Crim. App. 2005)……...………..…11

*Hill v. State,* 883 S.W.2d 765 (Tex. App.--Amarillo 1994, pet. ref'd)……........11, 12

*Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)……………................18

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)................................13, 14

*M., K., & T. Ry. V. Eyer*, 96 Tex. 72, 70 S.W.529 (1902)………………………2, 3

*Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, no pet.)……...…11

*Martinez v. State*, 696 S.W.2d 930 (Tex. App.—Austin 1985, pet. ref'd)……….10

*Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999)………………………2, 3

*Ripkowski v. State*, 61 S.W.3d 378 (Tex. Crim. App. 2001)……………………….3

*Willeford v. State*, 72 S.W.3d 820 (Tex. App.—Fort Worth 2002, pet. ref'd)…..…3

*Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013)………………..…18

**Secondary Sources:**

George E. Dix and Robert O. Dawson, 43 *Texas Practice—
Criminal Practice and Procedure* § 42.141 (Supp. 1999)…………………………2

Model Penal Code §240.1…………………………………………………………...11

# I.

## REPLY TO ARGUMENTS REGARDING ISSUES PRESENTED

In her Appellant's Brief, Ms. Cary quoted Justice FitzGerald's dissent in the Court of Appeals, which described this case as "a completely misdirected and unsupported prosecution and conviction that are not supported by law." Dissenting Opinion at 9. If anything, the State's Brief confirms exactly what Justice FitzGerald wrote.

Remarkably, the State's Brief tries to blame Ms. Cary for the State's decision to charge sections of the bribery statute containing an essential element that the State not only could not and did not prove, but that the State affirmatively disproved, and that is fundamentally inconsistent with the State's theory and evidence at trial. Even more remarkably, in a desperate attempt to salvage this prosecution, the State makes the completely nonsensical argument that the bribery statute does not mean what it says, does not require proof of intentionally offering, conferring, or agreeing to confer to a public official a benefit as consideration for specified acts by the public official, and instead only requires proof that the defendant acted with a general "corrupt intent."

For the reasons that follow, the Court should reject this farcical legal gamesmanship and reverse Ms. Cary's convictions.

**A.** **Issue 1: The Court Should Reverse Ms. Cary's Bribery Convictions Because The State Affirmatively Negated The Element Of Bribery By Something Other Than "Political Contributions," And The Evidence Was Therefore Insufficient.**

Ms. Cary's Appellant's Brief established that the State failed to prove beyond a reasonable doubt, and indeed affirmatively negated, an element of the crime charged—that the alleged "benefit" offered or conferred to Suzanne Wooten was *not* "a political contribution as defined by Title 15, Election Code." Tex. Pen. Code § 36.02(d). *See* Appellant's Brief at 18-27. Accordingly, the evidence was insufficient to support the bribery convictions. *See id.*

**1. There Was No Estoppel Or Invited Error.**

The State first responds that Ms. Cary should be estopped from making this argument under the doctrine of invited error. The Court should reject this argument because invited error does not apply here and because only the State is to blame for its fundamentally flawed prosecution of Ms. Cary.

According to the cases cited by the State, the doctrine of invited error "defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (quoting George E. Dix and Robert O. Dawson, 43 *Texas Practice—Criminal Practice and Procedure* § 42.141 (Supp. 1999)). Thus, invited error applies "[w]here a party by a request for a ruling leads the court into error." *Id.* (quoting *M., K., & T. Ry. V. Eyer*, 96 Tex. 72, 74-75, 70 S.W.529,

529-30 (1902)); *see also Ripkowski v. State*, 61 S.W.3d 378, 389 (Tex. Crim. App. 2001) (quoting *Prystash*).  As the Fort Worth Court of Appeals summarized, "The court of criminal appeals has applied invited error when the defendant 'invites' the trial court to do something, the trial court does the act, and thereafter the defendant complains of the trial court's action."  *Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002, pet. ref'd).  Examples include a defendant requesting a jury instruction and then complaining on appeal that the trial court gave it, or requesting that a jury charge be deleted and complaining on appeal that the trial court did not give it.  *See Prystash*, 3 S.W.3d at 531-32.

The doctrine of invited error does not apply here.  Ms. Cary does not complain on appeal of any action or ruling by the trial court that she induced. Rather, she appeals because the evidence was insufficient to prove that she committed bribery by something other than a "political contribution," which the State was required to prove beyond a reasonable doubt.  Nor did Ms. Cary take the position, at any point, that if the State's theory of the case was correct, then the transfers were not political contributions under the bribery statute.  Thus, the doctrine of invited error does not apply.

More importantly, the reason that the State failed to disprove that the benefit was a political contribution, and the reason that the State actually negated this element, was ***not*** because of something Ms. Cary "invited."  Rather, it was because

the State charged, presented, and argued the case based on a fundamentally flawed understanding of the bribery statute, which assumed, incorrectly, that the term "political contribution" does not include political contributions that are not properly reported or that are otherwise illegal.

The State chose to charge Ms. Cary under sections 36.02(a)(1) and (2) of the bribery statute. As the State knew from the beginning of the prosecution, those subsections do not apply when the alleged "benefit" offered or conferred is "a political contribution as defined by Title 15, Election Code." Tex. Pen. Code § 36.02(d). The State also clearly realized that, because "political contribution" is an exception to the statute, the State had to negate it in the indictment and disprove it beyond a reasonable doubt. *See* Tex. Penal Code § 2.02 (b). Accordingly, in the Superseding Indictment, the State repeatedly charged, in all of the bribery counts and the Organized Criminal Activity count, that the requisite benefit was "other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305 of the Government Code." Superseding Indictment, Counts I-VII. Moreover, the jury instructions defined "political contribution" according to the statute and required, in all relevant counts, that the benefit had to be something other than a political contribution. *See* Clk. Rec. at 1050-51 (definitions); 1055, 1059-64 (instructions on bribery and EOCA counts).

Thus, the State knew throughout the case that, because of the way it charged Ms. Cary, it had to negate bribery by "political contribution" beyond a reasonable doubt. Ms. Cary did not induce this, and nothing she did changed or excused this. Yet, as demonstrated in Appellant's Brief at 21-23, literally from opening statement through closing argument, the State's entire theory of the case, and the only evidence it offered, relied on payments originating with Ms. Cary that the State argued were intended to be, and were, used for Suzanne Wooten's campaign. Those were clearly "political contributions" under the statutory definition. *See* Tex. Election Code § 251.001(2), (3), (5).

The State's problem was that it charged, presented, and argued the case based on a fundamentally flawed interpretation of the term "political contributions." Specifically, the State took the position that what would otherwise fit the definition of a "political contribution," is not a "political contribution" if it is improper or not properly disclosed. This was evident in closing argument when the prosecutor's only argument for why the payments from Ms. Cary were not "political contributions" was as follows:

> The next question is, is it a campaign contribution? **Well, for it to be a campaign contribution and to get this safe harbor, it has to be properly reported.** It's not in any of the campaign finance reports. We talked about that a little with Mr. Swihart. We had them in evidence if you wanted to look at them.

TR 9 at 12 (emphasis added).

The State's theory was and is manifestly incorrect. An illegal, unreported, or improperly reported political contribution is still a political contribution. As explained on pages 23-25 of Ms. Cary's Appellant's Brief, the definition of "political contribution" in the Texas Election Code does not incorporate requirements that the contribution must be proper or properly reported. Thus, as the Dissent in the Court of Appeals in this case, and all three justices in the Court of Appeals in Ms. Cary's husband's case recognized, "In other words, an illegal political contribution is still a political contribution." Dissenting Opinion at 12 (emphasis added); *see also* Appellant's Brief, App. A (*Cary v. State*, No. 05-13-01010, slip op. at 11 (Tex. App.—Dallas, March 25, 2015)) ("Additionally, under the applicable definitions in the election code, the money did not need to be transferred directly to Wooten's campaign account, nor did it need to be properly reported in Wooten's campaign filings, in order for it to constitute a political contribution."). The Majority Opinion in the Court of Appeals in this case did not disagree with this analysis, and neither does the State on appeal.

The State's contention that Ms. Cary's "defensive theory…necessarily required the State to prove that the payments were made for the benefit of Wooten" is beyond fallacious. *See* State's Brief at 18. What required the State to prove that the payments were made for the benefit of Ms. Wooten was the State's decision to charge that the payments constituted bribery of

Ms. Wooten. And, as noted above, the State pursued this theory from opening statement—before any "defensive theory" had been announced—through closing argument. As the prosecutor told the jury in opening statement:

> So, what Stacy Cary did was she, with her means, she secretly financed a candidate, Suzanne Wooten, to run against the presiding judge of the 380th Judicial District Court, Charles Sandoval.
>
> * * * *
>
> But in those instances, what is that money used for? That money is used to run Suzanne Wooten's campaign. Without this money, Suzanne Wooten can't fund her campaign, and it was a very expensive campaign, over a hundred thousand dollars.

TR 3 at 12, 21. The State was not somehow lured into this theory of the case. This was the State's theory from indictment through verdict. The State simply charged a crime that did not fit because it misunderstood the definition of "political contribution." Ms. Cary in no way invited that.

Next, the State argues that Ms. Cary should not be able to complain that the jury was not instructed on the heightened standard of proof required under section 36.02(a)(4)[1] of the bribery statute. *See* State's Brief at 17, 19. This argument is misplaced, however, because Ms. Cary is not complaining that the jury was not so

---

[1] The State's Brief refers to the "heightened proof requirements in Penal Code § 36.02(d)." State's Brief at 17, 19. This appears to be a reference to the heightened proof requirements in section 36.02(a)(4), which actually contains heightened proof requirements, whereas section 36.02(d) simply makes a "political contribution" an exception to sections 36.02(a)(1-3).

instructed. Nor could she do so, since she was not charged under that section. She *is* complaining that the evidence did not sufficiently support a conviction under the statutory subsections charged—sections 36.02(a)(1) and (2)—which require the State to negate the political contribution element beyond a reasonable doubt. The heightened standard of proof under section 36.02(d) does not apply when, as here the State charged sections 36.02(a)(1) and (2). The heightened standard of proof would apply if the State had charged section 36.02(a)(4), which it did not.

Ms. Cary has certainly pointed out that, by charging sections 36.02(a)(1) and (2), the State *avoided* the heightened proof requirements that apply when the alleged bribery is by political contribution. The purpose of this argument, however, is to show that the State would have had a substantially higher burden, which the State did not meet and could not have met, if the State had charged the proper section of the bribery statute. It was not to complain about an instruction that did not apply to the crime the State charged.

The Court should reject the State's attempt to blame Ms. Cary for its own flawed prosecution. There was no estoppel or invited error.

### 2. The Evidence Was Insufficient To Disprove Benefit By Political Contribution Beyond A Reasonable Doubt.

Next, the State makes a tortured argument that the jury could have found that Ms. Cary committed bribery through something other than a political contribution beyond a reasonable doubt. The only proof at trial of anything even

remotely resembling a benefit to Ms. Wooten, however, consisted of the transfers of money from Ms. Cary to Mr. Spencer that the State says were used to fund the Wooten campaign. *See, e.g.,* TR 3 at 12 ("So, what Stacy Cary did was she, with her means, she secretly financed a candidate, Suzanne Wooten, to run against the presiding judge of the 380th Judicial District Court, Charles Sandoval.").

Accordingly, if Ms. Cary *did not* intend for the transfers to be used for the Wooten campaign, then she did not have the requisite intent to commit bribery. If she *did* intend for the transfers to be used for the Wooten campaign, then the transfers are political contributions, and the State has failed to negate the political contribution exception.

To try to get around this, the State tries to rewrite the bribery statute. The State argues that the jury could have found Ms. Cary guilty of bribery if she merely made the transfers to Mr. Spencer with "corrupt intent." If she only had a generalized "corrupt intent," the State's argument goes, then the jury could have found that she did not intend for the money to go to Ms. Wooten's campaign, and it would not be a political contribution.

The most obvious problem with the State's argument is that, under the bribery statute, a generalized "corrupt intent" is not enough for a conviction. The applicable sections of the bribery statute require that the defendant must intend for the alleged benefit to the recipient to be "consideration," "for the recipient's

decision, opinion, recommendation, vote, or other exercise of discretion as a public servant," in the case of subsection (a)(1), or "as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding," in the case of subsection (a)(2). Tex. Penal Code § 36.02(a)(1) and (2).[2] This requisite intent distinguishes bribery from, for example, the gift statute that makes it a Class A misdemeanor to attempt to influence a politician through a gift with no strings attached. *See* Tex. Penal Code § 36.09 ("Offering Gift To Public Servant").

The State's own cases confirm that the bribery statute, as applied to these facts, requires proof of intent to offer, confer, or agree to confer "a benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant," under section 36.02(a)(1), or "any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding" under subsection 36.02(a)(2). Tex. Penal Code §36.02(a)(1) and (2). For example, in *Martinez v. State*, 696 S.W.2d 930, 932-33 (Tex. App.—Austin 1985, pet. ref'd), the Austin Court of Appeals explained that bribery requires proof that the defendant "intentionally or knowingly offers or solicits a benefit as consideration

---

[2] The bribery statute states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, opinion, recommendation, or vote, or other exercise of discretion as a public servant, party official, or voter [or in a judicial or administrative proceeding]." Tex. Pen. Code § 36.02(a)(1), (a)(2).

for a variety of official acts of omissions." The *Martinez* court further explained that, although bribery is an inchoate crime, it still requires proof that the "inchoate conduct [was] intended to achieve [the] objective" of an "agreement between the person who offers the bribe and the person who receives it." *Id.* (quoting Model Penal Code §240.1, Comment 4(b), (c)). Similarly, in *Mustard v. State*, 711 S.W.2d 71, 75 (Tex. App.—Dallas 1986, no pet.), the Dallas Court of Appeals held that, although an agreement need not be reached, the State's proof must establish that the defendant "intends an agreement" proscribed by the bribery statute.

Thus, the State is correct that bribery does not require the formation of an actual agreement between the actor and the public official. It does, however, require proof that the actor at least made an ***offer*** of a benefit to the public official with the ***intent to obtain an agreement*** with the public official for consideration that the bribery statute proscribes.

The law of parties does not change or lower the intent requirement, as the State suggests. Under the law of parties, every person charged with a crime must be shown beyond a reasonable doubt to have the same intent that the crime requires. *See Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex. Crim. App. 2005) ("What matters under § 7.02(a) [of the Texas Penal Code] is the criminal *mens rea* of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state."); *Hill v. State*, 883 S.W.2d 765, 771 (Tex.

App.--Amarillo 1994, pet. ref'd) ("[A defendant] is criminally responsible for the offense committed by [a co-defendant] only if the evidence shows that she *knew* [the co-defendant's] *unlawful intent* when she acted to promote or assist in his conduct." (emphasis in original)).

Accordingly, evidence that merely establishes a "corrupt intent" is insufficient to sustain a bribery conviction. Thus, if the jury believed Ms. Cary merely had "corrupt intent," it could not have found her guilty of bribery. In addition, in this context, a statute that merely criminalized "corrupt intent" would almost certainly be unconstitutionally vague and violate constitutional guarantees of Due Process and the First Amendment.

But the State's only evidence to support bribery consisted of money transfers that were necessarily political contributions under the State's own theory. Perhaps not surprisingly, the State's Brief in this Court goes to great lengths to avoid describing the evidence of bribery and explaining how it could have satisfied the elements of the bribery statute. The Court need only review the evidence recited in the Majority Opinion in the Court of Appeals to see how the State has now completely abandoned and distorted the evidence at trial.

At trial, to show motive, the State presented evidence that Ms. Cary's husband, David Cary, wanted someone to unseat the judge in his child custody case, Charles Sandoval, because of a variety of rulings he considered improper and

unfair. The State presented further evidence of the relationship between the Carys and Stephen Spencer and the fact that Suzanne Wooten was recruited by Stephen Spencer to run against Judge Sandoval. Mr. Spencer ultimately served as Ms. Wooten's campaign manager. There was also evidence about the amount of money her campaign would need to be successful. The State also went to great lengths to try to connect payments from Ms. Cary to Mr. Spencer, who served as Ms. Wooten's campaign manager, to the Wooten campaign. *See generally,* Majority Opinion at 53-58.[3]

The State had to connect the payments from Ms. Cary to Mr. Spencer to the Wooten campaign because ***there was no evidence of any type of benefit even arguably offered, conferred, or agreed to be conferred, to Ms. Wooten besides campaign funding***. Thus, without the campaign funding, the State could not satisfy the "benefit" requirement of the bribery statute. Accordingly, the only evidence that could conceivably support the requisite "benefit" consisted of political contributions.

The State also argues that Ms. Cary has misconstrued or misapplied the standard for sufficiency review based on *Jackson v. Virginia*, 443 U.S. 307, 99 S.

---

[3] In footnote 12 of the State's Brief, the State poses a hypothetical in which a defendant makes a direct transfer of property to a judge, but the judge sells the property and uses it for the judge's campaign. In the hypothetical, the State urges, a jury could find that the defendant intended to transfer a benefit to the judge directly, rather than through campaign contributions. In this case, however, there was no evidence whatsoever of anyone transferring, or even considering transferring, anything of value directly to Ms. Wooten or anywhere other than to the campaign. The hypothetical simply assumes facts not in evidence.

Ct. 2781 (1979). Ms. Cary has not. She quoted the *Jackson* standard in her Appellant's Brief, and her arguments apply it correctly. Beyond quoting this Court's standard of review in her brief, she believes that the Court is probably very familiar with the *Jackson* standard and able to apply it in this case without additional briefing.

The State negated an element of its case and failed to prove bribery by something other than a political contribution. The evidence was therefore insufficient, and the Court should reverse Ms. Cary's bribery convictions.

**B.** **Issue 2: The Evidence Was Insufficient To Prove The Requisite Official Action Intended To Be Exchanged For The Alleged Benefit, As Required By The Bribery Statute.**

The bribery statute requires that the alleged benefit to the recipient must be intended to be "consideration," "for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant," in the case of subsection (a)(1), or "as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding", in the case of subsection (a)(2). Tex. Penal Code § 36.02(a)(1) and (2). Here, there was insufficient evidence to support the three types of consideration charged in the indictment and presented in the jury charge: (1) becoming a candidate for judge; (2) continuing to run for judge; and (3) making favorable rulings as a judge.

The State's arguments mischaracterize both Ms. Cary's arguments and the bribery statute. The State argues, incorrectly, that Ms. Cary takes the position that the bribery statute requires an actual agreement. She does not. In her Appellant's Brief, she specifically stated:

> Because the statute proscribes "offering" or "agreeing to confer" a benefit in exchange for official consideration, the benefit need not actually be accepted by the public official, but there must be proof beyond a reasonable doubt that the benefit was at least offered to the public official *in exchange for the consideration*. *See Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd).

Appellant's Brief at 28. This is a correct statement of the law.

The State, however, again attempts to read out of the bribery statute the fact that the benefit must be offered "as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion *as a public servant*," under section 36.02(a)(1) (emphasis added), or "as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion *in a judicial or administrative proceeding*" under section 36.02(a)(2) (emphasis added). Simply offering benefits to a public servant with the intent to influence the public servant generally, but without intending to obtain specific consideration from the public servant in return, might violate the Gift Statute, a Class A misdemeanor, but it is not bribery. *See* Tex. Penal Code § 36.09 ("Offering Gift To Public Servant").

In her Appellant's Brief, Ms. Cary demonstrated that the first alleged consideration—Ms. Wooten's decision to run for office—cannot support a bribery conviction because the bribery statute does not apply to a decision by a private citizen to become a candidate. *See* Appellant's Brief at 28-29. The State, like the Majority Opinion below, does not respond to this argument.

Ms. Cary next demonstrated that there was no evidence to support the second alleged consideration—Ms. Wooten's continuing to run for judge. *See* Appellant's Brief at 29-30. At a minimum, the State had to prove that someone offered Ms. Wooten a benefit as consideration for her agreement that she would continue to run for judge and that Ms. Cary was responsible under the law of parties. But as the Dissent below pointed out, there was no evidence that anyone made any such offer. *See* Dissenting Opinion at 16-17. Tellingly, the State does not even attempt to identify any evidence of such an offer. Instead, the State essentially asks the Court to assume that it did not need evidence because it got a jury verdict. Its only response is that the lack of evidence that Ms. Wooten considered dropping out of the race or that anyone thought she needed inducement to stay in the race does not demonstrate that the evidence was insufficient. What it ***does*** mean, however, is that the mere fact that Ms. Wooten continued to run for judge is no evidence at all that anyone offered her a benefit as consideration for

continuing to run for judge. Certainly, it is not enough for a rational jury to find this consideration beyond a reasonable doubt.

Finally, Ms. Cary demonstrated that there was insufficient evidence to support the third alleged consideration—favorable rulings by Judge Wooten. There was certainly no direct evidence that anyone offered Ms. Wooten a benefit as consideration for favorable rulings, much less that Ms. Cary knowingly or intentionally advanced it. The State does not disagree. Moreover, any circumstantial evidence is completely undercut by the lack of any meaningful favorable rulings by Judge Wooten, and indeed her recusal when she had a chance to do so, the lack of evidence that Ms. Wooten had any idea where Mr. Spencer was getting money, and the utter lack of evidence that Ms. Wooten even knew who the Carys were, so that she would not know for whom to rule. At best, the circumstantial evidence indicated a desire by David Cary to defeat Judge Sandoval and money transferred from Stacy Cary to Stephen Spencer that was used on the Wooten campaign. *See* Appellant's Brief at 30-32. This is not sufficient to prove an offer by someone to Ms. Wooten of a benefit in return for favorable rulings. That would be pure speculation.

The State responds in three ways. First, the State posits that maybe there was an offer of a benefit in return for favorable rulings by someone, and it was just so poorly thought out that nobody bothered to let Ms. Wooten know for whom she

was supposed to rule favorably.  There was no evidence of this, though, and it is pure speculation, which cannot support a bribery conviction.  *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (holding that "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions").

Second, the State refers to a number of facts that boil down to an inference that Ms. Cary intended to do *something* wrong.  *See* State's Brief at 40-46.  This does not mean, however, that Ms. Cary committed or intended to commit *bribery*. The State cannot simply rely on evidence that Ms. Cary did, or intended to do, *something* wrong.  Instead, the evidence must be such that, in the light most favorable to the verdict, a rational jury could conclude that the State proved *each element of the crime charged* beyond a reasonable doubt.  *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).  Evidence of doing, or intending to do something wrong, was therefore insufficient to establish the third type of alleged consideration under the bribery statute.

Third, the State repeats its absurd position that it only needed to show that Ms. Cary had "corrupt intent," as opposed to the intent set forth in the bribery statute.  *See* State's Brief at 39-40.  As explained above, this argument is simply not credible.

The State failed to submit sufficient evidence to establish the consideration required by the bribery statute. Of the three types of consideration charged in the Superseding Indictment, one was legally deficient, and the other two were insufficiently supported by the evidence. The Court should therefore reverse Ms. Cary's bribery convictions.

**C.** **Issue 3:** **The evidence was insufficient to prove that Ms. Cary had the requisite intent to commit bribery.**

Ms. Cary's Appellant's Brief established that the evidence was insufficient to prove that Ms. Cary had the requisite intent to commit bribery because:

-Only by impermissible speculation could a jury conclude that bribery occurred at all, since there was no evidence that anyone offered, conferred, or agreed to confer a benefit to Ms. Wooten as consideration for any action or inaction set forth in the bribery statute.

-Only by even further impermissible speculation could a jury conclude that Ms. Cary knew about, and had specific intent to promote or assist, any alleged bribery.

-Intent to provide benefits to a campaign, or even to violate campaign finance laws, is not intent to commit bribery.

*See* Appellant's Brief at 33-35.

The State's response is to refer back to its arguments that there were facts sufficient to infer that Ms. Cary did, or intended to do, *something* wrong and that the State need only prove generalized "corrupt intent." The Court should reject those arguments for the reasons set forth above.

**D.** **Issue 4: The Evidence Was Insufficient To Support Ms. Cary's Conviction For Engaging In Organized Criminal Activity And Money Laundering.**

Finally, Ms. Cary argued that there was insufficient evidence to support her convictions for Engaging in Organized Criminal Activity ("EOCA"), and Money Laundering. EOCA required proof of a predicate crime, and the predicate crimes charged were bribery, money laundering, and tampering with a government record. Money laundering, both as a predicate crime for EOCA and as a separate count, required proof of a predicate crime, and the only predicate crime charged was bribery.

For the reasons set forth in Appellant's Brief, the evidence of tampering with a government record was manifestly insufficient. None of the justices in the Court of Appeals took the position that there was sufficient evidence of tampering with a government record. *See* Dissenting Opinion at 21. The State does not even try to defend it. Thus, EOCA and money laundering stand or fall with the bribery charges. For the reasons set forth above, they must fall.

## CONCLUSION

Ms. Cary respectfully requests that the Court reverse her convictions.

Respectfully submitted,


_____/s/ John M. Helms_____
John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx 75204
Tel:  (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLANT,
STACY STINE CARY


## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of this instrument has been served on counsel of record on August 18, 2015, as follows:

Joseph Corcoran (lead appellate counsel)  (via ECF and electronic mail)
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711

_____/s/ John M. Helms_____
John M. Helms

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that the word count of this reply brief, excluding the list of excluded sections under Rule 9.4(i)(1), is 4.918.  I have relied on the word count of the computer program used to prepare the document for this word count.

_____/s/ John M. Helms_____
John M. Helms